IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARKETRIC HUNTER
a minor child, by and through his
mother and legal guardian, Thelma
Lynah,

   Plaintiff,

     v.

RHONDA MEDOWS
in her Official Capacity as
Commissioner of the Georgia
Department of Community Health, et
al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-2930-TWT

ORDER

This is an action for injunctive and declaratory relief in which the Plaintiff claims that the Defendants are violating his rights under the Early Periodic Screening Diagnosis and Treatment ("EPSDT") provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(43) and 1396d(r). It is before the Court on the Defendants' Motions to Dismiss [Docs. 22, 26], which are DENIED.

I. Background

Plaintiff Marketric Hunter is a seven-year-old Medicaid beneficiary. (First Am. Compl. ¶ 5.) He lives with his adoptive mother, Thelma Lynah, in Savannah,

Georgia. (First Am. Compl. ¶ 4.) He experienced brain damage as a toddler and now suffers from a number of neurological conditions including static encephalopathy, cerebral palsy, and seizure disorders. (First Am. Compl. ¶ 37.) He participates in the Georgia Pediatric Program ("GAPP"), a subprogram of the Georgia Medicaid program through which eligible children receive in-home private duty skilled nursing services.

Defendant Rhonda Medows is the Commissioner of Georgia's Department of Community Health ("DCH"), which administers the Medicaid program in Georgia. (First Am. Compl. ¶ 6.) Defendant Georgia Medical Care Foundation, Inc. ("GMCF") is a non-profit corporation that, through a contractual relationship with DCH, reviews and decides all requests for private duty skilled nursing services made on behalf of Medicaid-eligible children under 21 in Georgia. (First Am. Compl. ¶¶ 9-11.)

Hunter's treating physicians have prescribed in-home private duty skilled nursing hours for the past five years. (First Am. Compl. ¶ 43.) According to the complaint, Hunter's allotted nursing hours have been consistently reduced in accordance with GAPP policies. (First Am. Compl. ¶ 47.) Hunter alleges that GMCF first capped his hours at 84 hours per week and then reduced his hours to 70 hours per week. (First Am. Compl. ¶ 48.) In May 2008, GMCF notified Lynah that it planned to further reduce Hunter's nursing hours to 63 hours per week. (First Am. Compl. ¶

49.) Hunter also alleges that GMCF refused to approve his physician's request for a nurse to travel in his family's vehicle. (First Am. Compl. ¶ 61.)

In August 2008, Hunter's physician requested an increase in hours in connection with Hunter's upcoming spinal surgery. (First Am. Compl. ¶ 50.) GMCF did not grant the request. On September 18, Hunter sued Medows and GMCF under 42 U.S.C. § 1983 alleging that the Defendants had violated his rights under the EPSDT provisions of the Medicaid Act. On September 29, this Court held a hearing on Hunter's Motion for a Preliminary Injunction. The Court enjoined Medows from enforcing a policy to limit medically necessary private duty skilled nursing services for eligible Medicaid beneficiaries under the age of 21 using criteria not based on medical necessity, and ordered the state to provide Hunter with the private duty skilled nursing hours provided for in a schedule set forth by GMCF. (Order on Pl.'s Mot. for Prelim. Inj. at 9.) Medows and GMCF now seek to dismiss Hunter's remaining §1983 claim for injunctive relief, declaratory relief, and litigation expenses.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff

would be able to prove those facts. Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

III. Discussion

A. Rights Enforceable Under 42 U.S.C. § 1983

Section 1983 creates liability for any person who violates the "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It may only be used to enforce federal statutes that create rights. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106 (1989). A statute creates a right if (1) it is intended to benefit the plaintiff, (2) it imposes a binding obligation on the state, and (3) it creates an interest that is sufficiently specific as to be judicially enforceable. Id.

Medows contends that 42 U.S.C. §§ 1396a(a)(43) and 1396d(r) (collectively "EPSDT provisions") do not create an enforceable right. She relies on Blessing v. Freestone, 520 U.S. 329 (1997), and Gonzaga University v. Doe, 536 U.S. 273 (2002),

the Supreme Court's two most recent decisions considering whether a statute creates a right enforceable under § 1983. In Blessing, the Supreme Court held that Title IV-D of the Social Security Act, which creates a duty for states to provide child support services, does not create a blanket federal right to force state agencies to comply with its provisions. Blessing, 520 U.S. at 343. In Gonzaga, the Court held that a federal law may be enforced under § 1983 only if Congress clearly intended to create a private right of action. Gonzaga, 536 U.S. at 285. In that case, the Court ruled that the Family Educational Rights and Privacy Act, which prohibits federal funding of "any educational agency or institution which has a policy or practice of permitting the release of education records," did not create an enforceable right. Id. at 288. In both cases, the Court emphasized that the relevant statutory language had "an aggregate focus" that was "not concerned with whether the needs on any particular person [had] been satisfied." Gonzaga, 536 U.S. at 288; Blessing, 520 U.S. at 344.

Although Blessing and Gonzaga narrow the availability of § 1983, it remains an appropriate remedy here. The EPSDT provisions satisfy the three-factor test articulated in Golden State Transit and modified in Blessing and Gonzaga. First, the EPSDT provisions are intended to benefit Hunter, who is eligible for the screening and treatment services described in the statute. See Kenny A. v. Perdue, 218 F.R.D. 277, 293-94 (N.D. Ga. 2003) (finding that EPSDT statutory provisions are clearly

intended to benefit children under the age of 21). Unlike the statutory language in Blessing and Gonzaga, the EPSDT provisions mandate the provision of screening and treatment services "in <u>all</u> cases where they are requested." 42 U.S.C. § 1396a(a)(43)(B) (emphasis added). Second, the EPSDT provisions create a binding obligation on the state. As recognized by the United States Court of Appeals for the Eleventh Circuit, "The language of § 1396d(r)(5) <u>expressly requires</u> Medicaid participating states to provide necessary treatment to correct or ameliorate defects and physical illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." <u>Pittman v. Secretary, Florida Dept. of Health and Rehabilitative Services</u>, 998 F.2d 887, 891-892 (11th Cir. 1993) (emphasis added). Finally, the interest created by the EPSDT provisions is sufficiently specific as to be judicially enforceable. See <u>Kenny A.</u>, 218 F.R.D. at 294. The provisions' mandate is clearly defined in 42 U.S.C. § 1396d(r), which describes in detail the required screening and treatment services.

This interpretation is consistent with the prior holdings of this Court and the position adopted by the majority of Circuits. <u>Moore v. Medows</u>, 1:07-CV-0631-TWT, Order on Pl.'s Second Emergency Mot. for a Temp. Restraining Order and Prelim. Inj., March 28, 2008 at 4. Since <u>Gonzaga</u>, the Third, Fifth, and Ninth Circuits have found an enforceable § 1983 right in § 1396a(a)(10), a similarly worded Medicaid

provision.  See Watson v. Weeks, 436 F.3d 1152, 1159 (9th Cir. 2006); Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 189 (3d Cir. 2004); S.D. ex rel. Dickson v. Hood, 391 F.3d 581, 603-04 (5th Cir. 2004); see also Westside Mothers v. Haveman, 289 F.3d 852, 863 (6th Cir. 2002) (finding enforceable right pre-Gonzaga); Miller v. Whitburn, 10 F.3d 1315, 1319 (7th Cir.1993) (finding enforceable right pre-Gonzaga). Similarly, since Gonzaga, the Sixth and Tenth Circuits have assumed that § 1396a(a)(10) creates an enforceable right without expressly deciding the issue.  See Oklahoma Chapter of American Academy of Pediatrics v. Fogarty, 472 F.3d 1208, 1212 n.1 (10th Cir. 2007); Westside Mothers v. Olszewski, 454 F.3d 532, 543 (6th Cir. 2006).  Moreover, the First, Second, Sixth, and Eighth Circuits have found enforceable rights in other similarly worded provisions of the Medicaid Act since Gonzaga.  See Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Services, 443 F.3d 1005, 1016 (8th Cir. 2006) (vacated in part on other grounds, Selig v. Pediatric Specialty Care, Inc., 551 U.S. 1142 (2007));  Rabin v. Wilson-Coker, 362 F.3d 190, 201-02 (2d Cir. 2004); Gean v. Hattaway, 330 F.3d 758, 772-73 (6th Cir. 2003); Bryson v. Shumway, 308 F.3d 79, 88 (1st Cir. 2002).

Medows also contends that Hunter must show that the Medicaid statute intends to create a private remedy.  However, "[p]laintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally

supplies a remedy for the vindication of rights secured by federal statutes." Gonzaga, 536 U.S. at 284. Accordingly, "[o]nce a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." Id.

B.  Under Color of Law

To state a claim under § 1983, a plaintiff must show that the defendant acted under color of state law. "[U]nder color of law has consistently been treated as the same thing as the state action required under the Fourteenth Amendment." United States v. Price, 383 U.S. 787, 794 n.7 (1966). The Eleventh Circuit has applied three tests to determine whether state action exists: (1) the nexus/joint action test; (2) the state compulsion test; and (3) the public function test. Willis v. University Health Services, Inc., 993 F.2d 837, 840 (11th Cir. 1993). The nexus/joint action test asks whether "the state has so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." Id. The public function test asks whether the private actor is performing a function "traditionally the exclusive prerogative of the state." Id. Finally, the state compulsion test asks whether the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." Id.

GMCF contends it is not a state actor. The Court begins by considering whether there is a sufficient connection between the state and GMCF to render GMCF

a state actor under the nexus/joint action test. GMCF asserts that there is not a sufficient nexus because its physicians exercised independent professional judgment to determine whether to allot the requested number of private skilled nursing hours. It relies on Fridman v. City of New York, 183 F. Supp. 2d 642 (S.D.N.Y. 2002). There, the plaintiff, an applicant for city public assistance benefits, enrolled in New York City's Work Experience Program (WEP). Shortly thereafter, he requested a medical exemption from his WEP assignment. Defendant HS Systems, a private corporation that performed medical evaluations of applicants seeking exemptions, assigned a physician to examine the plaintiff. The physician determined that the plaintiff was "employable subject to limitations." The plaintiff challenged the physician's assessment under § 1983. The United States District Court for the Southern District of New York held that the physician and HSS did not act under color of state law. Id. at 651.

Other courts have reached the opposite conclusion in factually similar cases. For example, in Catanzano by Catanzano v. Dowling, 60 F.3d 113 (2d Cir. 1995), Medicaid recipients challenged the system by which New York provided home health care benefits under the Medicaid program. Under state law, home health care benefits were provided by certified home health agencies. The agencies were private organizations licensed and regulated by the state that, "pursuant to state law, [made]

their own determinations as to the medical necessity and appropriateness of home health services." Id. at 115. The United States Court of Appeals for the Second Circuit concluded that the certified home health agencies were state actors because the state exercised coercive power and because the state and the home health agencies had a "close collaborative relationship." Id. at 119.

Here, the alleged role of GMCF is similar to that of the organizations in Fridman and Catanzano. However, the Court finds the reasoning of the Second Circuit more persuasive. Like the CHHAs in Catanzano, GMCF is a private organization that independently reviews claimants' requests for a federally-mandated category of medically necessary services. According to the complaint, DCH delegated to GMCF the task of reviewing and deciding whether to approve or deny all requests for nursing services that are made on behalf of Medicaid-eligible children. (First Am. Compl. ¶ 26.) Hunter also alleges that GMCF participates in developing the policies and procedures governing approval and denial decisions. (First Am. Compl. ¶ 29.) According to the complaint, GMCF and DCH regularly meet to discuss GAPP policies, and GMCF employees routinely testify at benefits-denial appeal hearings. (First Am. Compl. ¶¶ 30-31.) Hunter alleges that DCH officials train GMCF employees prior to such hearings. (First Am. Compl. ¶ 32.) Based on the facts alleged in the complaint, and in light of Catanzano, the Court finds that GMCF's

conduct may be fairly attributed to the state under the nexus/joint action test.

C. Justiciability

An actual controversy must exist at all stages of federal court proceedings. Any change in facts that ends the controversy renders the case moot. The Defendants assert that the Court's Preliminary Injunction Order renders Hunter's claims moot. However, in addition to temporary injunctive relief in connection with Hunter's private duty skilled nursing hours, Hunter also seeks permanent injunctive relief, declaratory relief, and litigation expenses. The Defendants assert that Hunter does not have standing to assert these remaining claims because he does not allege an actual or imminent injury. However, Hunter's allegations that he is subject to continuous reductions in his allotted care and that he does not receive proper notice and opportunity to respond to such reductions are sufficiently concrete to confer standing for the remaining claims.

IV. Conclusion

For the reasons stated above, the Defendants' Motions to Dismiss [Doc. 22, 26] are DENIED.

SO ORDERED, this 15 day of December, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge