IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARKETRIC HUNTER
a minor child, by and through his
mother and legal guardian, Thelma
Lynah,

   Plaintiff,

    v.

RHONDA MEDOWS
in her Official Capacity as
Commissioner of the Georgia
Department of Community Health, et
al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-2930-TWT

OPINION AND ORDER

This is an action for injunctive and declaratory relief in which the Plaintiff claims that the Defendants are violating his rights under the Early Periodic Screening Diagnosis and Treatment ("EPSDT") provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(43) and 1396d(r). It is before the Court on the Plaintiff's Second Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 39], which is GRANTED.

## I. Background

Plaintiff Marketric Hunter is an eight-year-old Medicaid beneficiary. (First Am. Compl. ¶ 5.) He lives with his adoptive mother, Thelma Lynah, in Savannah, Georgia. (First Am. Compl. ¶ 4.) He experienced brain damage as a toddler and now suffers from a number of neurological conditions including static encephalopathy, cerebral palsy, and seizure disorders. (First Am. Compl. ¶ 37.) He participates in the Georgia Pediatric Program ("GAPP"), a subprogram of the Georgia Medicaid program through which eligible children receive in-home private duty skilled nursing services.

Defendant Rhonda Medows is the Commissioner of Georgia's Department of Community Health ("DCH"), which administers the Medicaid program in Georgia. (First Am. Compl. ¶ 6.) Defendant Georgia Medical Care Foundation, Inc. ("GMCF") is a non-profit corporation that, through a contractual relationship with DCH, reviews and decides all requests for private duty skilled nursing services made on behalf of Medicaid-eligible children under twenty-one in Georgia. (First Am. Compl. ¶¶ 9-11.)

In July 2008, Dr. Styles Bertrand, and orthopaedic surgeon, diagnosed Hunter with hip dysplasia. (Bertrand Aff. ¶ 3.) On January 28, 2010, Dr. Bertrand performed surgery on Hunter's hips to correct the dysplasia. (Bertrand Aff. ¶ 4.) Hunter will be in a body cast for six to eight weeks while recovering from the surgery. (Bertrand Aff. ¶ 5.) Dr. Bertrand requested twenty-four hours a day of skilled nursing care

during this period and eighteen hours a day of skilled nursing care after the cast is removed to prevent skin breakdown, respiratory infection, and other complications. (Bertrand Aff., Ex. 3.) GMCF denied Dr. Bertrand's request and instead approved twenty-four hours a day of skilled nursing care for three days, eighteen hours a day of skilled nursing care for four days, eighty-four hours a week of skilled nursing care for five weeks, and seventy hours a week of skilled nursing care for the remainder of the certification period. (Bertrand Aff., Exs. 5, 7, and 9.) The Plaintiff now moves for a temporary restraining order and a preliminary injunction pursuant to Fed. R. Civ. P. 65(b) to enjoin the Defendants from denying the amount of private duty skilled nursing hours ordered by Dr. Bertrand.

## II. Standard for Preliminary Injunctive Relief

The Plaintiff's motion for a preliminary injunction is governed by a four-factor test. The Plaintiff must show (1) a likelihood of success on the merits, (2) that he will suffer irreparable injury unless the injunction issues, (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the defendants, and (4) that the injunction would not be adverse to the public interest. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).

## III. Discussion

The issue here is what role the state may play in deciding the amount of nursing hours necessary to correct or ameliorate the Plaintiff's condition. The Court addressed this issue in <u>Moore v. Medows</u>, 1:07-cv-631, 2009 WL 4884029 (N.D. Ga. Dec. 9, 2009), and held:

> [T]he state may determine whether the physician's diagnosis or prescribed treatment was without any basis in fact. Thus, the state may review an order of a treating physician for fraud, abuse of the Medicaid system, and whether the service is within the reasonable standards of medical care.

<u>Id.</u> at *4 (internal citations omitted). Otherwise, the state may not second guess a physician's prescribed treatment for his patient. Here, the Defendants have not shown that there is an issue of fraud or abuse of the Medicaid system or that Dr. Bertrand's request for increased hours is not based in fact. The denial of care is not based upon criteria of medical necessity. Therefore, I conclude that the Plaintiff has established a likelihood of success on the merits.

The other three factors also support issuance of a preliminary injunction. First, denying Hunter private duty nursing services after complex surgery creates a heightened risk of respiratory infections, skin breakdown, and other complications. Second, these injuries outweigh the monetary damages to the state caused by providing additional nursing hours. Third, providing additional hours for Hunter is

consistent with the legislative goal of the EPSDT program and not adverse to the public interest.

IV. Conclusion

For these reasons and those set forth on the record of the hearing on February 16, 2010, the Plaintiff's Second Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 39] is GRANTED, and it is hereby ORDERED that the Defendants are enjoined from denying the Plaintiff's request for twenty-four hours a day of private duty skilled nursing services for six to eight weeks while he is in a body cast, and eighteen hours a day of private duty skilled nursing services after the cast is removed until March 31, 2010.

SO ORDERED, this 17 day of February, 2010.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge