IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARKETRIC HUNTER
a minor child, by and through his
mother and legal guardian, Thelma
Lynah,

    Plaintiff,

      v.

CIVIL ACTION FILE
NO. 1:08-CV-2930-TWT

DAVID A. COOK
Commissioner of the Georgia
Department of Community Health,

    Defendant.

ORDER

This is action seeking injunctive relief against the Georgia Department of

Community Health. It is before the Court on David Cook's Motion for Judgment on

the Pleadings [Doc. 69], Georgia Medical Care Foundation, Inc.'s Motion for

Judgment on the Pleadings [Doc. 67],  and the Plaintiff's Second Motion to Amend

the Complaint [Doc. 65].  For the reasons set forth below, the Court DENIES David

Cook's Motion for Judgment on the Pleadings [Doc. 69], DENIES as moot Georgia

Medical Care Foundation, Inc.'s Motion for Judgment on the Pleadings [Doc. 67],

and GRANTS the Plaintiff's Second Motion to Amend the Complaint [Doc. 65].

## I.  Background

When the First Amended Complaint was filed, the Plaintiff Marketric Hunter was a seven-year-old Medicaid beneficiary.  (First Am. Compl. ¶ 5.)  He lives with his adoptive mother, Thelma Lynah, in Savannah, Georgia.  (First Am. Compl. ¶ 4.)  He experienced brain damage as a toddler and now suffers from a number of neurological conditions including static encephalopathy, cerebral palsy, and seizure disorders. (First Am. Compl. ¶ 37.)  He participates in the Georgia Pediatric Program ("GAPP"), a subprogram of the Georgia Medicaid program through which eligible children receive in-home private duty skilled nursing services.

Defendant David Cook is the Commissioner of Georgia's Department of Community Health ("DCH"), which administers the Medicaid program in Georgia. (First Am. Compl. ¶ 6.)  Defendant Georgia Medical Care Foundation, Inc. ("GMCF") is a non-profit corporation that, through a contractual relationship with DCH, reviews and decides all requests for private duty skilled nursing services made on behalf of Medicaid-eligible children under 21 in Georgia.  (First Am. Compl. ¶¶ 9-11.)

Hunter's treating physicians have prescribed in-home private duty skilled nursing hours since 2005.  (First Am. Compl. ¶ 43.)  According to the Complaint, Hunter's allotted nursing hours have been consistently reduced in accordance with GAPP policies.  (First Am. Compl. ¶ 47.)  Hunter alleges that GMCF first capped his

hours at 84 hours per week and then reduced his hours to 70 hours per week.  (First

Am. Compl. ¶ 48.)  In May 2008, GMCF notified Lynah that it planned to further

reduce Hunter's nursing hours to 63 hours per week. (First Am. Compl. ¶ 49.) Hunter

also alleges that GMCF refused to approve his physician's request for a nurse to travel

in his family's vehicle.  (First Am. Compl. ¶ 61.)

In August 2008, Hunter's physician requested an increase in hours in

connection with Hunter's upcoming spinal surgery. (First Am. Compl. ¶ 50.) GMCF

did not grant the request.  On September 18, 2008, Hunter sued Rhonda Medows[1] and

GMCF under 42 U.S.C. § 1983 alleging that the Defendants had violated his rights

under the EPSDT provisions of the Medicaid Act [See Doc. 1].  On October 1, 2008,

the Court enjoined Medows from enforcing a policy to limit medically necessary

private duty skilled nursing services for eligible Medicaid beneficiaries under the age

of 21 using criteria not based on medical necessity.  The Court also ordered the state

to provide Hunter with the private duty skilled nursing hours provided for in a

schedule set forth by GMCF [Doc. 9].

On February 11, 2010, Hunter filed a Second Motion for Temporary

Restraining Order and Preliminary Injunction [Doc. 39].  The Court granted the

---

[1]When Hunter filed his Complaint, Rhonda Medows was the Commissioner of the Georgia Department of Community Health.

Plaintiff's Motion on February 18, 2010 [Doc. 47].  On July 7, 2011, the Plaintiff filed

a Second Motion to Amend the Complaint [Doc. 65].  The Proposed Second Amended

Complaint seeks to add claims under Title II of the ADA, 42 U.S.C. § 12132, class

claims, and join four new plaintiffs.  On August 8, 2011, GMCF and Cook filed

Motions for Judgment on the Pleadings, arguing that Hunter's claims are moot [Docs.

67 & 69].  See FED. R. CIV. P. 12(c).  On September 12, 2011, Hunter filed a Motion

to Voluntarily Dismiss GMCF [Doc. 75].   The Court granted this motion on

September 14, 2011 [Doc. 76].

## II.  Motion for Judgment on the Pleadings Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that

the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion

to dismiss for failure to state a claim, however, even if it is "improbable" that a

plaintiff would be able to prove those facts; even if the possibility of recovery is

extremely "remote and unlikely."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556

(2007) (citations and quotations omitted).  In ruling on a motion to dismiss, the court

must accept factual allegations as true and construe them in the light most favorable

to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American

Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally,

notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v.

Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082

(1986).  Under notice pleading, the plaintiff need only give the defendant fair notice

of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus,

551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).  This standard also applies

to a motion under Rule 12(c) for judgment on the pleadings.  See, e.g., M.H.D. v.

Westminster Schools, 172 F.3d 797, 802 n.12 (11th Cir. 1999) ("If the court concludes

that the . . . statute provides no relief . . . then it properly dismisses that cause of action

for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or 12(c)."); Burbach

Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002).

## III.  Discussion

### A.    GMCF's Motion for Judgment on the Pleadings

On September 14, 2011, the Court granted Hunter's Motion to Voluntarily

Dismiss GMCF [Doc. 76].  For this reason, GMCF's Motion to Dismiss [Doc. 67] is

moot.

### B.    Cook's Motion for Judgment on the Pleadings

Cook argues that the passage of time has mooted the Plaintiff's claims.

Specifically, Cook claims that Hunter has recovered from his September 2008 surgery

and has been receiving some private duty nursing hours.[2]   The Plaintiff, however, does

not allege that he has received *no* private duty nursing care.   Indeed, the Plaintiff

asserts that the Defendants have consistently *reduced* his allotted care and failed to

provide him with an opportunity to respond to such reductions.   Further, Hunter

contends that he still requires significant private duty nursing care. (First Am. Compl.

¶¶ 40-43.)   Thus, the Plaintiff's claims are not moot.

Cook also argues that the Eleventh Circuit's decision in Moore v. Reese, 637

F.3d 1220 (11th Cir. 2011), requires dismissal of the Plaintiff's claims.  In Moore, a

16-year-old Medicaid recipient alleged that the defendant violated the Medicaid Act

by reducing her allotted private duty nursing hours from 94 to 84.   The Court of

Appeals noted that "the state may limit required private duty nursing services based

upon a medical expert's opinion of medical necessity so long as (1) the state's

limitations do not discriminate on the basis of 'diagnosis, type of illness, or condition'

and (2) the services provided are sufficient in amount and duration to reasonably

achieve the purpose of private duty nursing services." Id. at 1257 (quoting 42 C.F.R.

§ 440.230(b) & (c)).   The court, however, found that there were issues of material fact

as to whether 84 private duty nursing hours were "sufficient in amount to . . . correct

or ameliorate [the plaintiff's] condition." Id.  at 1257-58.  The court noted testimony

---

[2]The Defendant offers no support for this claim, however.

from the defendant's medical expert that "given the nature of [the plaintiff's] current medical problems, her stable medical condition, and her lack of hospitalizations, only 84 hours of private duty nursing services at home are now medically necessary." Id. at 1258.

Here, the Defendant argues that, as in Moore, "GMCF made a determination that [Hunter's] physician's request did not meet medical necessity standards." (Cook's Mot. to Dismiss, at 8; Doc. 69-1.)  Whether the private duty nursing hours requested by Hunter's physicians are medically necessary, however, must be determined by the finder of fact.[3]  See Moore, 637 F.3d at 1258 (amount of private duty nursing hours that are medically necessary is question for fact finder at trial). Indeed, on a motion for judgment on the pleadings, the Court must accept the Plaintiff's factual allegations as true.  See Quality Foods de Centro America, 711 F.2d at 994-95.  Here, Hunter alleges that his physicians made private duty nursing calculations based on his "medically fragile" condition.  (First Am. Compl. ¶ 39.) Indeed, Hunter's physicians "have determined that Marketric needs to receive the healthcare service 'private duty nursing' in his home so that he can stay as healthy as possible, to compensate for the multiple health conditions he has, to improve or

---

[3]Indeed, unlike Moore, the Defendant does not state what factors GMCF considered in reducing Hunter's private duty nursing hours.

prevent these conditions from worsening, and to keep him from developing new problems." (Id. ¶ 40.) Based on these factors, Hunter claims that his requested nursing hours are medically necessary. Although Cook disagrees with this conclusion, taking the allegations in the complaint as true, the question of medical necessity cannot be resolved on a motion for judgment on the pleadings.

C.      Hunter's Second Motion to Amend

The Plaintiff has moved to amend the First Amended Complaint under Federal Rules of Civil Procedure 15 and 20. First, Hunter seeks to add four new plaintiffs. Under Rule 20, "[a] party seeking joinder of claimants . . . must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined." Alexander v. Fulton Co., 207 F.3d 1303, 1323 (11th Cir. 2000). Courts should "employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy." Id.

Under the first prong of Rule 20, "[transaction] may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Id. (quoting Moore v. New York Cotton Exchange, 270 U.S. 593, 610 (1926)). A pattern or practice of discrimination may satisfy the transaction requirement. See Mosley v. General Motors Corp., 497

F.2d 1330, 1334 (8th Cir. 1974) (allowing Rule 20 joinder and reasoning that employer's policy "designed to discriminate against blacks in employment . . . [arose] out of the same series of transactions and occurrences."). Here, Hunter alleges that all plaintiffs have been subjected to GAPP's policy of systematically reducing private duty nursing hours. As in <u>Mosley</u>, this practice constitutes a single transaction for purposes of Rule 20. <u>See id.</u> (noting that claims arising from practice of discrimination arise from same transaction, even though discriminatory practice may be applied many times.)

"The second prong of Rule 20 does not require that all questions of law and fact raised by the dispute be common, but only that some question of law or fact be common to all parties." <u>Alexander</u>, 207 F.3d at 1324. Here, the new plaintiffs are Medicaid recipients under the age of 21. Like Hunter, the plaintiffs require in-home private duty nursing services. The plaintiffs allege that those services have been reduced or denied under GAPP's policy designed to systematically reduce or deny in home private duty nursing services. Thus, for all the plaintiffs, the Court must decide whether GAPP applied a policy that systematically reduced or denied private duty nursing hours in violation of the Medicaid Act. For this reason, Hunter may join the plaintiffs named in the Second Amended Complaint.

Further, the Plaintiff seeks to add claims under Title II of the ADA, 42 U.S.C. § 12131 *et seq.* Federal Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Further, "[t]here must be a substantial reason to deny a motion to amend." Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1274 (11th Cir. 2001). Here, the Defendant does not allege delay, bad faith, or dilatory motive. There will be no undue prejudice by allowing Hunter to amend the First Amended Complaint.

Cook does argue, however, that Hunter's proposed amendment is futile.[4] Specifically, the Defendant contends that the plaintiffs cannot assert claims under Title II of the ADA because the plaintiffs are not currently institutionalized. Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In Olmstead v. L.C., 527 U.S. 581 (1999), the Court found that "unnecessary segregation" and "unjustified isolation" in institutional facilities constituted discrimination under Title II of ADA. Id. at 582 and 600-601. The Court

---

[4]Cook requests that the Court dismiss the plaintiffs' Title II claims. Hunter's Motion to Amend, however, has not yet been granted. Thus, the Court will address Cook's arguments on futility grounds.

held that "States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." Id. at 607.

Nevertheless, the Defendant argues that the plaintiffs cannot assert a Title II claim because they are not currently institutionalized. In Fisher v. Oklahoma Health Care Auth., 335 F.3d 1175 (10th Cir. 2003), the plaintiffs were receiving in-home Medicaid services. When the state reduced the number of prescription medications covered under Medicaid, the plaintiffs claimed they would be forced into an institution. First, the court noted that "Olmstead does not imply that disabled persons who, by reason of a change in state policy, stand imperiled with segregation, may not bring a challenge to that state policy under the ADA's integration regulation without first submitting to institutionalization." Id. at 1182. The Tenth Circuit held that there were issues of material fact as to whether "reasonable modifications to Oklahoma's program must be made" to prevent the plaintiffs from being institutionalized. Id. at 1184. The court reasoned that Title II's "protections would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them

into segregated isolation." Id. at 1181; see also Haddad v. Dudek, No. 3:10-CV-414-J-34TEM, 2011 WL 1892322 (M.D. Fla. March 16, 2011) (finding that plaintiff stated claim under Title II of ADA where state's failure to provide in-home Medicaid services threatened to force her into institutionalized nursing care facility).

Here, as in Fisher and Haddad, the plaintiffs allege that they will be forced into institutional nursing facilities if they are denied the in-home duty nursing services requested by their physicians. (Second Am. Compl. ¶ 69.) Title II of the ADA "would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation." Fisher, 335 F.3d at 1181. Thus, Hunter's amendment is not futile. For these reasons, the Plaintiff's Second Motion to Amend is granted.

## IV. Conclusion

For the reasons set forth above, the Court DENIES David Cook's Motion for Judgment on the Pleadings [Doc. 69], DENIES as moot Georgia Medical Care Foundation, Inc.'s Motion for Judgment on the Pleadings [Doc. 67], and GRANTS the Plaintiff's Second Motion to Amend the Complaint [Doc. 65].

SO ORDERED, this 27 day of September, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge