IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARKETRIC HUNTER
a minor child, by and through his
mother and legal guardian, Thelma
Lynah, et al.,

    Plaintiffs,

      v.

DAVID A. COOK
Commissioner of the Georgia
Department of Community Health,

    Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-2930-TWT

OPINION AND ORDER

This is an action seeking injunctive and declaratory relief against the Georgia Department of Community Health. It is before the Court on the Defendant's Motion for Partial Summary Judgment [Doc. 158]. For the reasons set forth below, the Defendant's motion [Doc. 158] is GRANTED in PART and DENIED in PART.

I. Background

The Plaintiffs in this case receive Medicaid-funded private duty nursing services from Georgia's Department of Community Health ("DCH"). Under the Medicaid Act, Georgia is required to provide certain categories of care to eligible

children, including early and periodic screening, diagnostic and treatment services ("EPSDT"). In Georgia, a child who is enrolled as a member of the Georgia Pediatric Program ("GAPP"), which provides EPSDT services, is eligible to receive private duty nursing services. Private duty nursing services are defined as "nursing services for beneficiaries who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility." 42 C.F.R. § 440.80. These services are provided by a registered nurse or nurse practitioner under the direction of the recipient's physician at either the recipient's home, a hospital, or a skilled nursing facility. Id.

The Plaintiffs are children who have received private duty nursing services through GAPP. Each Plaintiff suffers from multiple system medical diagnoses and requires ongoing care. The Plaintiffs contend that they have been denied sufficient hours of private duty nursing services because the Defendant has not approved their requests for private duty nursing services based on physician recommendations. Plaintiff Hunter's private duty nursing hours were reduced from 84, then to 70, and then to 63, and the Defendant denied his request for constant private nursing duty following a painful operation. S.R. contends that her physician recommended 60 hours of skilled nursing care per week but that the Defendant only approved 40 hours

and has since reduced that to 36 hours and again to 32 hours.[1] J.M. contends that the private nursing hours provided to him were reduced from his personal physician-recommended 84 hours a week to 70 hours a week. R.E. contends that the Defendant reduced his hours from 60 to 52 but then returned to 60 hours a week after his physician recommended 84 hours a week. (Sec. Am. Compl. ¶¶ 50-104).

The Plaintiffs' second amended complaint alleges claims for violations of the Medicaid Act and its EPSDT provisions, violations of Title II of the Americans with Disabilities Act (the "ADA"), and violations of the Fifth and Fourteenth Amendments. On June 19, 2012, the Court granted permanent injunctive relief and a declaratory judgment preventing the Defendant from reducing the private nursing services provided to former plaintiff Zachary Royal. On August 2, 2012, the Court denied the Plaintiffs' motion to certify a class. On January 30, 2013, the Defendant filed the instant motion for partial summary judgment. The Defendant moves for partial summary judgment arguing that all of the Plaintiffs' claims should be dismissed with the exception of those claims related to the number of skilled nursing hours which are medically necessary for the Plaintiffs to correct or ameliorate their medical conditions.

## II. Motion for Summary Judgment Standard

---

[1] Plaintiff S.R. filed a Motion for a Temporary Restraining Order and Preliminary Injunction on May 6, 2013, concerning new facts not at issue in this Order. (See [Doc. 175]).

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III.  Discussion

The Defendant moves for summary judgment on a variety of grounds. With respect to the Plaintiffs' allegations under the Medicaid Act, the Defendant argues that (1) the Plaintiffs have not identified the services they have been deprived of under the Georgia Medicaid Program; (2) the Plaintiffs have not demonstrated that the Defendant fails to inform them of the scope of services available under the EPSDT; (3) the Plaintiffs have not shown that the Defendant denies or reduces services based on a Plaintiff's specific illness or condition; (4) the Plaintiffs have not shown that the Defendant applies the wrong standard to requests for nursing services; (5) the

Plaintiffs have not shown that the Defendant violated the law by reducing services based on a Plaintiff's relative stability; (6) the Plaintiffs have not shown they have been denied medically necessary services;[2] (7) the Plaintiffs have not shown that the Defendant denies private duty skilled nursing services on the basis of cost; and (8) the Plaintiffs have not shown that they have been denied transport with a nurse to doctor appointments.

The Defendant also contends that it has not violated the Plaintiffs' rights under the Fifth and Fourteenth Amendments because it does provide adequate notice of decisions on coverage and provides a meaningful opportunity to challenge those decisions. Likewise, the Defendant argues that the Plaintiffs have not shown the Defendant has made arbitrary and capricious decisions with respect to the Plaintiffs' coverage. Finally, the Defendant argues that the Plaintiffs' ADA claims must fail because the threat of institutionalization itself is not a cognizable injury under the ADA.

    A.    <u>The Plaintiffs' Claims Under the Medicaid Act</u>

---

[2] The Defendant does not move for summary judgment on the issue of whether the Plaintiffs are provided with the medically necessary amount of private duty nursing hours, acknowledging that there is a question of fact on that issue. See <u>Moore v. Reese</u>, 637 F.3d 1220, 1258 (11th Cir. 2011) (concluding that a factfinder should resolve the issue of the amount of private duty nursing hours that are medically necessary).

1.  <u>Whether the Defendant Provides All Medically Necessary Services</u>

The Defendant contends that the Plaintiffs have not shown what medically necessary services they have been denied under the Georgia Medicaid Program. The Plaintiffs argue they have provided evidence that case management services, personal care services, and incontinence supplies are covered by the Medicaid Act, <u>see</u> 42 U.S.C. §§ 1396d(a)(19), (24), (25), but not provided by GAPP. (<u>See</u> Ivy Dep. at 38-39, 46-47; Kelly Dep. at 84). However, as the Defendant points out, the Plaintiffs did not list deprivations of these services in their complaint. Further, the Defendant argues that these services are available through GAPP and Medicaid, and that Plaintiff Hunter received personal care services via a Medicaid waiver. (<u>See</u> Ivy Dep. at 27, 49; Dubberly Dep. at 140; Lynah Dep. at 21-22). Moreover, the Plaintiffs' evidence does not indicate that any Plaintiff was personally deprived of case management services, personal care services, or incontinence supplies. Accordingly, the Defendant's motion for partial summary judgment should be granted with respect to the provision of case management services, personal care services, and incontinence supplies. However, to the extent the Plaintiffs argue they are not receiving the medically necessary number of private duty nursing hours from the Defendant, that is a question for a factfinder and summary judgment should be denied in that respect. <u>See</u> <u>Moore v. Reese</u>, 637 F.3d 1220, 1258 (11th Cir. 2011) (concluding that a

factfinder should resolve the issue of the amount of private duty nursing hours that are medically necessary).[3]

### 2. Whether the Defendant Informs the Plaintiffs of the Scope of Services Available Under EPSDT

The Defendant contends that the Plaintiffs have not shown that they were not effectively informed of the scope of services under the EPSDT. The Defendant is required to effectively inform all eligible individuals under 21 and their families about EPSDT. See 42 U.S.C. § 1396a(a)(43); 42 C.F.R. § 441.56(a); see also Westside Mothers v. Olszewski, 454 F.3d 532, 543 (6th Cir. 2006). According to the Defendant, healthcare providers are informed of the services available under EPSDT and those services are also listed on the Defendant's websites. The Plaintiffs argue that the provider manuals carrying the information are difficult to access through the DCH websites. However, the Plaintiffs provide no case law to support their argument that confusion within the DCH websites is a violation of the requirement to effectively inform EPSDT participants. Further, the Plaintiffs offer no evidence suggesting that the Plaintiffs themselves were not effectively informed of the scope of the EPSDT program. Accordingly, the Defendant's motion for partial summary judgment should be granted in this respect.

---

[3] The Defendant agrees there is a question of fact in this respect.

### 3. Whether the Defendant Denies or Reduces Services Based on the Plaintiffs' Illnesses or Conditions

The Defendant argues that the Plaintiffs have not shown that the Defendant reduces or denies services based on the Plaintiffs' specific illnesses or conditions. The Plaintiffs have provided evidence suggesting that the Defendant reduces services based on whether a child needs to be fed and hydrated through a G-tube or a J-tube and whether a child has seizures. (See Def.'s Mot. for Partial Summ. J., Ex. N; Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Exs. A, B, C). However, this evidence only demonstrates that the Defendant makes coverage decisions based on the type of treatments prescribed, not on the type of illnesses or conditions themselves. For example, the Plaintiffs' Exhibit A is an initial notification of denial of additional private duty nursing hours sent by the Defendant to Plaintiff Hunter. According to the Plaintiffs, this document shows that the Defendant discriminates against Plaintiff Hunter because he has seizures. The letter states that "[a]lthough [Plaintiff Hunter] is having seizures, having skilled nursing will not prevent their duration or intensity." (Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. A, at 3). This statement does not demonstrate discrimination against Hunter because he suffers from seizures, but rather a determination by GAPP concerning its preferred and effective treatment methods for seizures. Indeed, the letter further notes that Hunter's seizures for the three preceding months "have been brief without respiratory compromise or the need

for skilled nursing intervention." (Id.) In short, the Plaintiffs' evidence only establishes that the Defendant may restrict coverage based on the available treatments for the symptoms from which the Plaintiffs suffer, not that the Defendant is reducing or denying services based on specific illnesses or conditions. See Moore, 637 F.3d at 1255 (citing Rush v. Parham, 625 F.2d 1150, 1152-55 (5th Cir. 1980)) (noting that a state may place appropriate limits on service on a case-by-case basis). Accordingly, the Defendant's motion for partial summary judgment should be granted in this respect.

### 4. Whether the Defendant Applies the Proper Standard to Requests for Nursing Services

The Defendant contends that the Plaintiffs have not shown that the Defendant applies an improper standard to requests for private duty nursing services. The Plaintiffs cite letters sent to Hunter, R.E., and J.M. as evidence of the Defendant's use of the wrong standard. (See Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Exs. A, B, C). However, there is nothing in these letters to indicate that the Defendant has not adhered to the "medically necessary" standard required by the Medicaid Act. See Moore, 637 F.3d at 1255 (requiring Georgia to provide nursing services to EPSDT members when "medically necessary to correct or ameliorate" the member's condition). Likewise, the Plaintiffs' assertion that the standard language GAPP uses to deny coverage is itself the wrong standard is without merit. (See id. Ex. H). There

is nothing in the standard form letter promulgated by GAPP to suggest that the Defendant is not adhering to the standard required by the Medicaid Act. Accordingly, the Plaintiffs have not demonstrated that the Defendant uses the wrong standard in evaluating requests for private duty nursing, and the Defendant's motion for partial summary judgment should be granted in that respect. However, there remains a question of fact concerning whether the Defendant's decisions to limit the Plaintiffs' private duty nursing services hours were in accordance with the "medically necessary" standard.

### 5. Whether the Defendant Denies Services Because a Plaintiff's Condition has not Deteriorated Enough

The Defendant contends it is entitled to reduce or deny services to a Plaintiff whose condition has stabilized. The Plaintiffs provide evidence demonstrating that Plaintiff Hunter was provided with fewer private duty nursing hours because his condition had stabilized. (See Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. D, at 1). The Plaintiffs have not shown that the Defendant's determination in this respect violated the Medicaid Act. See Moore, 637 F.3d at 1255 (citing Rush, 625 F.2d at 1152, 1155) (noting that a state may place appropriate limits on service on a case-by-case basis); id. at 1258 (noting that the State "may permissibly conclude that persons whose conditions are worsening or who require frequent hospitalizations have a higher degree of medical necessity than those who are chronically stable.").

Accordingly, to the extent the Plaintiffs' claims are based on whether the Defendant reduces services based on the relative stability of a patient's conditions, those claims should be dismissed. However, there remains a question of fact with respect to whether the Defendant is providing the Plaintiffs with the medically necessary level of private duty nursing services.

### 6. Whether the Plaintiffs are Provided With Medically Necessary Services

The Plaintiffs argue they are not receiving medically necessary services because the Defendant refuses to approve the requests submitted by the Plaintiffs' treating physicians. However, "[a] state may adopt a definition of medical necessity that places limits on a physician's discretion." Moore, 637 F.3d at 1255 (citing Rush, 625 F.2d at 1154). Further, "[b]oth the treating physician and the state have roles to play ... and 'a private physician's word on medical necessity is not dispositive.'" Id. (quoting Moore v. Medows, 324 Fed. App'x. 773, 774 (11th Cir. 2009)). Here, the Plaintiffs argue their provisions of private duty nursing hours are less than the medically necessary amount because their treating physicians recommend additional hours. Because the Defendant "'can review the medical necessity of treatment prescribed by a doctor on a case-by-case basis,' and may present its own evidence of medical necessity in disputes between the state and Medicaid patients," the fact that the hours of private duty nursing services provided by the Defendant is less than the

hours of services recommended by the Plaintiffs' treating physicians does not necessarily indicate the Defendant has not provided all medically necessary treatment. See id. at 1258. Accordingly, there is a question of fact with respect to the number of private duty nursing hours that are medically necessary for the Plaintiffs' care, and the Defendant's motion for partial summary judgment should be denied in this respect.

### 7. Whether the Defendant Denies Services Based on Cost

The Defendant argues the Plaintiffs have failed to provide evidence to show that the Defendant denies services based on cost. The Defendant argues that the new GAPP manual does not list cost as a factor in determining whether to provide private nursing duty and that the provisions in the old manuals addressing cost referred to by the Plaintiffs were associated with the medically fragile daycare program, not the private duty nursing services program. The Defendant's evidence indicates that cost is not a factor in the private duty nursing program. (See Def.'s Mot. for Partial Summ. J., Ex. A. Dubberly Dep. at 119). The only provision in the current manuals that the Plaintiffs refer to as demonstrating that the Defendant impermissibly uses cost as a factor is the provision stating that "Services for individuals requiring excessive hours of skilled nursing care for an extended period or for an indefinite period of time where skilled needs may be best served in a nursing facility" are "Non-Covered" services. (See Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. P, GAPP Manual

January 1, 2013, Part II Policies and Procedures of the Georgia Pediatric Program, § 906). This provision only appears to discuss where a child can best be served and makes no mention of cost. Although the Plaintiffs argue this provision may *allow* the Defendant to withhold services based on cost, the Plaintiffs provide no evidence to suggest the Defendant has actually done so. The Plaintiffs also point to a DCH release showing a table of Georgia Medicaid expenditures in fiscal year 2011. According to the Plaintiffs, this demonstrates that the "Defendant is also clearly acutely aware of the cost of nursing services provided under GAPP." (Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., at 8). Even assuming this release does indicate the Defendant is aware of the costs of nursing services, there is nothing in the release to suggest any denial or reduction of services based on cost. Therefore, the Plaintiffs' evidence is insufficient to create an issue of fact with respect to whether the Plaintiffs are denied services based on cost. Accordingly, the Defendant's motion for partial summary judgment should be granted in this respect.

        8.    <u>Whether the Defendant Provides for a Nurse to Travel to Doctor Appointments</u>

The Defendant argues that the Plaintiffs have not demonstrated that the Defendant fails to provide a nurse to travel with the Plaintiffs to doctor appointments. The Defendant contends GAPP policy allows for a request for a nurse to accompany a GAPP member to a medical visit using non-emergency transportation. (<u>See</u> Def.'s

Mot. for Partial Summ. J., Ex. E, Collins Dep. at 65-66).  The Plaintiffs contend that GAPP does not allow for non-emergency transportation of nurses unless the Plaintiffs have shown they have no other form of transportation.  However, the Plaintiffs have not provided evidence to suggest they have been denied any requests for non-emergency transportation with their nurses.  Indeed, Plaintiff Hunter has traveled with a nurse to doctor appointments through the non-emergency travel program. (See Def.'s Mot. for Partial Summ. J., Ex. L, Lynah Dep. at 63-64).  Accordingly, the Defendant's motion for partial summary judgment should be granted in this respect.

### B.     The Plaintiffs' Claims Under the Americans With Disabilities Act

The Defendant claims that the Plaintiffs do not have a cognizable injury under the Americans With Disabilities Act ("ADA").  The Plaintiffs argue that the threat of institutionalization is cognizable under the ADA.  The United States has filed a statement of interest agreeing with the Plaintiffs that their claims are cognizable under the ADA.

Under the Americans with Disabilities Act, a public entity may not discriminate against qualified individuals based on a disability.  42 U. S. C. § 12132.  "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d).  The Supreme Court has construed the ADA's integration mandate and

concluded that the discrimination forbidden under Title II of the ADA includes "unjustified institutional isolation" of the disabled. Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 600 (1999). "Thus, under *Olmstead* and the applicable ADA regulations, when treatment professionals have determined that community placement is appropriate for disabled individuals, those individuals do not oppose the placement, and the provision of services would not constitute a 'fundamental alteration,' states are required to place those individuals in community settings rather than institutions." Fisher v. Oklahoma Health Care Authority, 335 F.3d 1175, 1181 (10th Cir. 2003); Pashby v. Delia, 709 F.3d 307, 322 (4th Cir. 2013) ("individuals who must enter institutions to obtain Medicaid services for which they qualify may be able to raise successful Title II [of the ADA] claims because they face a risk of institutionalization."). The Plaintiffs may succeed on their ADA claim if the Defendant's action places him at a "high risk" of premature entry into institutional isolation. Id. at 1185.

Here, each Plaintiff has been subjected to reductions or potential reductions in Medicaid-funded private duty nursing services. (See Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Exs. A, B, C; Am. Compl. ¶¶ 85-94). As noted above, there is an issue of fact with respect to whether the reductions and limits of the Plaintiffs' private duty nursing services hours were reduced in violation of the

"medically necessary" requirement. See Moore, 637 F.3d at 1258 (concluding that a factfinder should resolve the issue of the amount of private duty nursing hours that are medically necessary). These reductions in hours may place the Plaintiffs at a high risk of premature institutionalization. (See [Doc. 113], at 21 (noting that reductions in hours of private duty nursing services provided to former plaintiff placed him at risk of being institutionalized)). Because there is a question of fact with respect to whether the reductions in private duty nursing hours were in accordance with the Defendant's duty to provide medically necessary treatment, there is an issue of fact with respect to whether the Plaintiffs face a threat of premature institutionalization, and summary judgment should be denied on the Plaintiffs' ADA claims.

      C.      <u>The Plaintiffs' Claims Under the Fifth and Fourteenth Amendments</u>

The Defendant argues that the Plaintiffs have not shown violations of their rights under the Fifth and Fourteenth Amendments. The Plaintiffs claim that the Defendant's use of boilerplate language in written notices denying or reducing services violates their due process rights. The Plaintiffs provide no case law explaining how the boilerplate language violates their due process rights. Further, the Defendant has shown that GAPP determinations include the ability to appeal, and that some Plaintiffs have even taken advantage of the appeal process. (See Def.'s Mot. for Partial Summ. J., Ex. C, at § 803.A; Ex. I, Manuel Dep. at 22). Accordingly, the

Plaintiffs have not shown that the boilerplate language in the Defendant's written notices violated their rights under the Fifth and Fourteenth Amendments.

The Plaintiffs also argue that the Defendant makes arbitrary and capricious decisions about the Plaintiffs' Medicaid coverage because it uses criteria such as stability and the confidence of a caregiver when determining whether to extend private duty nursing hours.  (See Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. D).  However, the Plaintiffs do not describe how these criteria are unrelated to the "medically necessary" standard.  The Plaintiffs separately suggest that the boilerplate language in denial of coverage letters indicates arbitrary and capricious decision-making.  The written notice is required to contain the reasons supporting the decision, 42 C.F.R. § 431.210(b), but the letters of denial or reduction sent to the Plaintiffs do include such reasons.  (See Pls.' Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., Exs. A, B, & C).  Finally, the Plaintiffs contend that the Defendant ignores the recommendations of treating physicians in an arbitrary and capricious matter.  As noted above, the recommendation of the treating physician is not the final word on what treatment is "medically necessary."  See Moore, 637 F.3d at 1255.  Accordingly, the Plaintiffs have not shown that the Defendant has made arbitrary and capricious decisions concerning the Plaintiffs' coverage.  Therefore, the Defendant's motion for

partial summary judgment should be granted with respect to the Plaintiffs' Fifth and Fourteenth Amendment claims.

## IV.  Conclusion

For the reasons set forth above, the Defendant's Motion for Partial Summary Judgment [Doc. 158] is GRANTED in PART and DENIED in PART.

SO ORDERED, this 21 day of May, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge